2020R01398/JS

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. Zahid N. Quraishi |
| v. | : | Crim. No. 25-CR-25 (ZNQ) |
| CINTIA ELAXCAR | : | 18 U.S.C. § 1349 |
| | : | (Wire Fraud Conspiracy) |

## INFORMATION

The defendant having waived in open court prosecution by indictment, the United States Attorney for the District of New Jersey charges:

**RECEIVED JAN 15 2025 AT 8:30 M CLERK, U.S. DISTRICT COURT - DNJ**

### Relevant Background

1. At times relevant to this Information:

    a. Williams-Sonoma, Inc. ("WSI") was incorporated in 1973 and has described itself as an "omni-channel specialty retailer of high-quality products for the home." WSI was headquartered in San Francisco, California, and sold products under several brands, including Williams-Sonoma, Pottery Barn, West Elm, Rejuvenation, and Mark and Graham. WSI sold merchandise to consumers via websites, direct-mail catalogs, and operated more than 500 retail stores in the United States, Puerto Rico, Canada, Australia, and the United Kingdom.

    b. WSI maintained distribution centers throughout the United States responsible for handling last-mile deliveries of WSI products to customers within each center's surrounding geographic area. "Last mile" delivery was the final step in the delivery process, when an item was transported from a distribution

center to the customer's doorstep. WSI maintained one such distribution center in Cranbury, New Jersey, which was responsible for handling last-mile deliveries of WSI goods to customers within New Jersey and the New York City metropolitan area (the "Cranbury Facility").

  c. Company-1 was a national transportation and logistics company based in Miami, Florida.

  d. Company-2 was a trucking firm based in New Jersey.

  e. WSI contracted outside firms, including Company-1 and Company-2, to provide last-mile delivery services of WSI merchandise to customers from the Cranbury Facility.

  f. Company-1, in turn, contracted multiple smaller trucking firms to complete these last-mile deliveries (the "Company-1 Subcontractors").

  g. Defendant CINTIA ELAXCAR ("ELAXCAR") was a resident of Perth Amboy, New Jersey. ELAXCAR worked as a billing and dispatch manager for Company-1 and was seconded to the Cranbury Facility.

  h. Raymond DeLeon, a coconspirator charged separately in this matter, was a resident of Ridgefield Park, New Jersey. DeLeon worked as an operations general manager for Company-1 at the Cranbury Facility.

  i. Company-1 employees, including ELAXCAR and DeLeon, regularly submitted or cause to be submitted to Company-1 billing requests for work done by the Company-1 Subcontractors. Those requests were in turn transmitted from Company-1 to WSI. WSI paid Company-1 for the work of the

Company-1 Subcontractors based on these billing requests, and Company-1 in turn paid the Company-1 Subcontractors for that work in accordance with the contract between Company-1 and the Company-1 Subcontractors.

### The Conspiracy

2.  From at least as early as in or around June 2018 through at least as recently as in or around September 2020, in Middlesex County, in the District of New Jersey, and elsewhere, the defendant,

**CINTIA ELAXCAR,**

did knowingly and intentionally conspire and agree with others to devise a scheme and artifice to defraud, and to obtain monies, funds and other property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such a scheme and artifice to defraud, to knowingly transmit and cause to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce certain writings, signs, signals, pictures, and sounds, contrary to Title 18, United States Code, Section 1343.

### Goal of the Conspiracy

3.  It was the goal of the conspiracy for ELAXCAR, DeLeon, and others (the "Conspirators") to enrich themselves by submitting fraudulent billing requests to WSI and Company-1, receiving illicit payment from WSI and Company-1 for those fraudulent billing requests, and distributing the proceeds among themselves.

## Manner and Means of the Conspiracy

4. It was part of the conspiracy that:

   a. The Conspirators comprised both employees of WSI and Company-1, including ELAXCAR and DeLeon (the "Employee Conspirators"), and certain Company-1 Subcontractors (the "Company-1 Subcontractor Conspirators").

   b. ELAXCAR, DeLeon, and other Employee Conspirators caused billing requests to be submitted to WSI and Company-1 seeking payment to the Company-1 Subcontractor Conspirators for work that the Company-1 Subcontractor Conspirators did not do.

   c. For example, ELAXCAR submitted billing requests totaling over $3.6 million seeking payment to Company-1 Subcontractor Conspirators for completing deliveries that Company-2 had actually completed. In this way, ELAXCAR defrauded WSI into paying for many of the same deliveries twice.

   d. Beyond these fraudulent double-billing requests, ELAXCAR, DeLeon, and the Employee Conspirators caused to be submitted to WSI and Company-1 billing requests that were fraudulent in numerous other respects. For example, the contract between Company-1 and the Company-1 Subcontractors provided for additional payment for deliveries that required an additional crew member and for deliveries that were especially difficult. ELAXCAR, DeLeon, and the Employee Conspirators caused requests for additional payment to be submitted on behalf of the Company-1 Subcontractor Conspirators that falsely claimed that certain deliveries either involved an additional crew member, were especially

4

difficult, or both. In other instances, ELAXCAR, DeLeon, and the Employee Conspirators simply fabricated deliveries and submit billing requests for them.

      e.    The Company-1 Subcontractor Conspirators knew full well that they were receiving substantial sums in fraudulent payments from WSI and Company-1 as a result of the fraudulent billing requests ELAXCAR, DeLeon, and the other Employee Conspirators caused to be submitted. In exchange, the Company-1 Subcontractor Conspirators made regular and substantial kickback payments to the Employee Conspirators, including ELAXCAR and DeLeon. ELAXCAR herself received over approximately $435,000 in kickback payments from various Company-1 Subcontractor Conspirators during the Conspiracy, and DeLeon himself received over approximately $200,000 in kickback payments.

In violation of Title 18, United States Code, Section 1349.

## FORFEITURE ALLEGATIONS

As a result of committing the conspiracy to commit wire fraud offense charged in this Information, contrary to Title 18, United States Code, Section 1343, and in violation of Title 18, United States Code, Section 1349, the defendant,

**CINTIA ELAXCAR,**

shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of the offense charged in this Information.

## SUBSTITUTE ASSETS PROVISION

If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of said defendant up to the value of the above-described forfeitable property.

*Philip R. Sellinger*
PHILIP R. SELLINGER
UNITED STATES ATTORNEY

Case Number: 25-CR-25(ZNQ)

# United States District Court
## District of New Jersey

UNITED STATES OF AMERICA

v.

CINTIA ELAXCAR

## INFORMATION FOR

18 U.S.C. § 1349

PHILIP R. SELLINGER
UNITED STATES ATTORNEY
FOR THE DISTRICT OF NEW JERSEY

JOSEPH STERN
ASSISTANT U.S. ATTORNEY
NEWARK, NEW JERSEY
973-297-2064